O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAM JEANNETTE LASSO, | Case No. CV 14-8247-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Miriam Jeannette Lasso ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

1

# I.
# **PROCEDURAL HISTORY**

On January 6, 2010, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 8, 2005. Administrative Record ("AR") at 130-35, 137-57. Plaintiff's applications were denied initially on July 29, 2010, and upon reconsideration on November 24, 2010. Id. at 85-89, 92-97. On December 13, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 99. On November 14, 2011, Plaintiff appeared and testified at a hearing held before the ALJ. Id. at 57. A vocational expert ("VE") also testified at the hearing. Id. at 76-77. On December 16, 2011, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 21-30.

On February 13, 2012, Plaintiff filed a request for the Agency's Appeals Council to review the ALJ's decision. Id. at 14-16. On August 22, 2014, the Appeals Council denied Plaintiff's request for review. Id. at 1-3.

On October 29, 2014, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 3. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed September 28, 2015, which the Court has taken under submission without oral argument. Dkt. 19.

# II.
# **FACTUAL BACKGROUND**

Plaintiff was born on June 28, 1969, and her alleged disability onset date is June 8, 2005. AR at 130, 138. She was thirty-five years old on the alleged disability onset date and forty-two years old at the time of the hearing before the ALJ. Id. at 61, 130, 138. Plaintiff has some college education, and prior work history as a receptionist and an administrative assistant. Id. at 29, 258. Plaintiff alleges disability based on "Fibromyalgia, myofascial pain, carpal tunnel, Quenains decesase [sic], insomnia, bi-polar[, and] depression." Id. at 134, 138.

///

2

# III.

## **STANDARD FOR EVALUATING DISABILITY**

To qualify for DIB or SSI, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

(9th Cir.2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.     Step One**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since June 8, 2005, the alleged onset date" of disability. AR at 23 (citations omitted).

**B.     Step Two**

At step two, the ALJ found Plaintiff had the following severe impairments: "myofascial pain disorder and right shoulder arthroscopy." <u>Id.</u> (citations omitted).

**C.     Step Three**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." <u>Id.</u> at 25 (citations omitted).

**D.     RFC Determination**

The ALJ found Plaintiff had the following RFC:
>  to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could occasionally climb ramps an[d] stairs, balance, stoop, kneel, crouch and crawl; occasionally reach overhead with the right

dominant upper extremity; frequently reach with the right upper extremity; and should never climb ladders, ropes and scaffolds.

Id. at 26.

**E.     Step Four**

At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a receptionist and administrative assistant. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." Id. at 29 (citations omitted). The ALJ found Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 8, 2005, through the date of this decision" and declined to proceed to step five. Id. at 30 (citations omitted).

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents six disputed issues:

1. Whether the ALJ erred in evaluating Plaintiff's treating and examining physicians.
2. Whether the ALJ erred in failing to find Plaintiff's depression, anxiety, and fibromyalgia were severe impairments.
3. Whether the ALJ erred in determining Plaintiff's credibility.
4. Whether the ALJ erred in rejecting the opinions of Lisa J. Martin and Fernando Lasso, lay witnesses.
5. Whether the ALJ erred in determining Plaintiff's RFC.
6. Whether the ALJ erred at Step 4 of the Sequential Evaluation.

JS at 3.

The Court finds the second issue, with respect to Plaintiff's depression, dispositive of this matter and thus declines to address the remaining issues. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]his Court

need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## VI.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence") (citations and internal quotation marks omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

6

2006) (citation and internal quotation marks omitted).

# VII.
# DISCUSSION

In assessing the severity of Plaintiff's impairments at step two, the ALJ found Plaintiff's depression non-severe because it did "not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities." AR at 24. As discussed below, the ALJ's finding at step two that Plaintiff's depression was non-severe was not supported by substantial evidence.

A.   **Background**

   1.   **Plaintiff's Mental Health Treatment**

      i.   **Dr. John J. Kohut**

Psychiatrist John J. Kohut, M.D. treated Plaintiff from August 23, 2005 to May 14, 2010. Id. at 310. In a letter dated May 14, 2010, Dr. Kohut stated Plaintiff's "diagnoses are that of Bipolar Affective Disorder, type II, depressed; Somatization Disroder [sic], NOS; Social Phobia; OCD; and Personality Disorder, NOS." Id. Dr. Kohut's letter also stated Plaintiff had "been under the care of" a clinical psychologist and "various other psychotherapists in the past," and Plaintiff "has been on a combination of" Xanax, Wellbutrin, Lamictal, Elavil, and Topamax. Id. Dr. Kohut treated Plaintiff "[a]s needed and intervals of three to six months." Id. at 67.

      ii.   **Dr. Van T. Chen**

Van T. Chen, M.D., Medical Director of Robert H. Ballard Rehabilitation Hospital, treated Plaintiff from September 8, 2009 to April 8, 2010. Id. at 246-263. In an Outpatient Followup Clinic Note dated September 8, 2009, Dr. Chen stated Plaintiff "has been treated for clinical depression with an anxiety disorder and panic attacks through her psychiatrist, Dr[.] Kohut. She continues to receive supportive psychotherapy with a psychological nurse practitioner through Dr[.] Kohut's office." Id. at 257. In an Outpatient Followup Clinic Note dated November 5, 2009, Dr. Chen stated Plaintiff had "a dysphoric affect," was "occasionally tearful," and had "some problems concentrating

and remembering her medication." Id. at 254. In an Outpatient Followup Clinic Note dated April 8, 2010, Dr. Chen noted Plaintiff had "a longstanding history of clinical depression with an anxiety disorder, . . . [and] continue[d] to experience significant psychological stress with her divorce proceedings which have become somewhat nasty." Id. at 246. Dr. Chen treated Plaintiff as frequently as twice a week and as infrequently as once in three months. Id. at 246-63.

### iii. Dr. Rahul M. Kale

Rahul M. Kale, M.D., a Sleep Medicine Fellow at Loma Linda University Health Care, performed a medical consultation of Plaintiff on May 6, 2009. Id. at 239-42. In medical notes dated May 11, 2009, Dr. Kale stated Plaintiff had "Anxiety/depression," and a Beck Depression Inventory ("BDI") score of 33/63.[2] Id. at 240-42.

### iv. Dr. Kenneth W. Landis

Kenneth W. Landis, M.D. performed an Internal Medical Consultation Exam of Plaintiff on June 10, 2010. Id. at 369, 371. Dr. Landis stated Plaintiff's past medical history included depression and medications included Xanax, Wellbutrin, Lamictal, and Topamax. Id. at 369.

### v. Dr. Edward Ritvo

Edward Ritvo, M.D., a Department of Social Services Psychiatrist, performed a Complete Psychiatric Evaluation of Plaintiff on June 29, 2010. Id. at 318. Dr. Ritvo's Diagnostic Impression included "Mood Disorder secondary to medical condition" and "Psychosocial stressors: Moderate." Id. at 321-22. Dr. Ritvo concluded Plaintiff had no impairments in her abilities to understand, remember, or complete simple commands; understand, remember, or complete complex commands; interact appropriately with

---

[2] BDI is used as an indicator of the severity of depression and comprises a self-reported, twenty-one item multiple-choice questionnaire. Psych Congress Network, Beck Depression Inventory-II (BDI-II), (Oct. 5, 2015, 8:36 AM), http://www.psychcongress.com/saundras-corner/scales-screenersdepression/beck-depression-inventory-ii-bdi-ii. A score of 33/63 "[i]ndicates severe depression." Id.

8

supervisors, coworkers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting. Id. at 322.

### 2. Plaintiff's Testimony Regarding Her Mental Health

At the hearing on November 14, 2011, Plaintiff testified regarding her mental health. Id. 64, 66-67, 72-73. Specifically, Plaintiff testified she received mental health treatment on a regular basis, saw her treating psychiatrist for about five or six years as needed and every three to six months, had diagnoses of bipolar disorder, anxiety, and depression, and took Lamictal, Wellbutrin, and Elavil. Id. at 66-67. Plaintiff also testified she stopped working because of "mental, focus, pain," and her "crying spells" and lack of "sharpness" would affect her ability to do her job. Id. at 64, 73.

### 3. Lay Witness Statements Regarding Plaintiff's Mental Health

Lay witnesses also offered statements regarding Plaintiff's mental health. Id. at 192-207. In a Function Report dated May 26, 2010, Lisa J. Martin, Plaintiff's friend, stated Plaintiff had anxiety attacks and angry outbursts "when frustrated or out of sorts." Id. at 192, 197-99. Martin further stated Plaintiff's "illnesses, injuries, or conditions affect[ed]" Plaintiff's memory, concentration, understanding, ability to complete tasks, and ability to follow instructions. Id. at 197. Moreover, Martin stated Plaintiff had "problems getting along with family, friends, neighbors, or others," and Plaintiff's "Mental abilities [were] affected to [the] point [one] must repeat things multiple times. Attention span [was] only 10-15 minutes. Concentration/tasks [were] all over the place." Id.

In addition, in a Function Report dated August 8, 2010, Fernando Lasso, Plaintiff's brother, stated Plaintiff's "illnesses, injuries, or conditions affect[ed]" Plaintiff's concentration, understanding, and ability to complete tasks. Id. at 201, 206-07. Lasso further stated Plaintiff "space[d] out when [he] talk[ed] and ha[d] hard times understanding." Id. at 206. Lasso also stated he "w[o]ke constantly to help [Plaintiff] calm down because of her anxiety attacks and depression." Id. at 207.

**B.     Applicable Law**

An ALJ must consider the severity of a claimant's impairment or combination of impairments at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ must find an impairment or combination of impairments severe if it more than minimally affects the claimant's mental ability to do basic work activities. 20 C.F.R. § 404.1521(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities include: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6).

An ALJ must not exploit "[a]n overly stringent application of the severity requirement," Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), and "may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence," Webb, 433 F.3d at 687. Notably, the ALJ must fully and fairly develop the medical evidence to assure he considers the claimant's interests. Smolen, 80 F.3d at 1288. Ambiguous evidence "triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks omitted); see McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.").

**C.     Analysis**

    **1.     The ALJ Erred In Finding Plaintiff's Depression Non-Severe At Step Two**.

Here, the Court finds the ALJ erred in failing to find Plaintiff's depression severe because a clear history of depression was established by: (1) Plaintiff's medical records; (2) Plaintiff's testimony; (3) and lay witnesses' statements.

First, objective medical records show Plaintiff's history of depression. AR at 240-42, 246, 254, 310, 369. Dr. Kohut, Plaintiff's treating psychiatrist of five years, stated Plaintiff's "diagnoses are that of Bipolar Affective Disorder, type II, depressed; Somatization Disroder [sic], NOS; Social Phobia; OCD; and Personality Disorder, NOS." Id. at 310. Dr. Kohut also stated Plaintiff had "been under the care of" a clinical psychologist and "various other psychotherapists in the past," and Plaintiff "has been on a combination of" Xanax, Wellbutrin, Lamictal, Elavil, and Topamax. Id.

Dr. Chen, Plaintiff's treating physician, noted Plaintiff had "a longstanding history of clinical depression with an anxiety disorder, . . . [and] continue[d] to experience significant psychological stress with her divorce proceedings which have become somewhat nasty." Id. at 246. Dr. Chen further noted Plaintiff had a "dysphoric affect," was "occasionally tearful," and had "some problems concentrating and remembering her medication." Id. at 254.

Moreover, consultative doctors noted Plaintiff's depression. Id. at 240-42, 369. Dr. Kale stated Plaintiff had "Anxiety/depression" and noted her BDI score of 33/63, which indicates severe depression. Id. at 241-42. Dr. Landis also stated Plaintiff's past medical history included depression and medications included Xanax, Wellbutrin, Lamictal, and Topamax. Id. at 369.

11

Second, Plaintiff testified as to the impact of her depression.[3] Id. at 64, 66-67, 73. Plaintiff testified she received mental health treatment on a regular basis; saw her treating psychiatrist for about five or six years as needed and every three to six months; had diagnoses of bipolar disorder, anxiety, and depression; and took Lamictal, Wellbutrin, and Elavil. Id. at 66-67. Plaintiff further testified she stopped working because of "mental, focus, pain," and her "crying spells" and lack of "sharpness" would affect her ability to do her job. Id. at 64, 73.

Third, lay witnesses' statements further documented the impact of Plaintiff's depression. Id. at 192-207. Lay witness Martin stated Plaintiff had anxiety attacks and angry outbursts "when frustrated or out of sorts." Id. at 197. Martin further stated Plaintiff's "illnesses, injuries, or conditions affect[ed]" Plaintiff's memory, concentration, understanding, ability to complete tasks, and ability to follow instructions. Id. Martin also stated Plaintiff had "problems getting along with family, friends, neighbors, or others," and Plaintiff's "Mental abilities [were] affected to [the] point [one] must repeat things multiple times. Attention span [was] only 10-15 minutes. Concentration/tasks [were] all over the place." Id. Similarly, lay witness Lasso stated Plaintiff's "illnesses, injuries, or conditions affect[ed]" Plaintiff's concentration, understanding, and ability to complete tasks. Id. at 206-07. Lasso further stated Plaintiff "space[d] out when [he] talk[ed] and ha[d] hard times understanding." Id. at 206. Lasso also stated he "w[o]ke constantly to help [Plaintiff] calm down because of her anxiety attacks and depression." Id. at 207.

---

[3] Defendant argues the ALJ rejected Plaintiff's testimony and her lay witnesses' statements as not credible. AR at 42-44, 47-48. This argument cannot save the ALJ's error at step two. While "[c]redibility determinations do bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions," there is "no inconsistency between [Plaintiff's] complaints and [her] doctors' diagnoses sufficient to doom [her] claim as groundless under the de minimis standard of step two." Webb, 433 F.3d at 688 (citation omitted).

Medical records, Plaintiff's testimony, and lay witnesses' statements thus establish a long-standing history of depression that more than minimally limited Plaintiff's mental ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(a); Webb, 433 F.3d at 686. While Dr. Rivto opined Plaintiff's mental health issues did not cause impairments based upon a one-time evaluation, this opinion alone does not outweigh the contrary records, testimony, and statements, and does not "clearly establish" the ALJ's conclusion that Plaintiff's depression was not severe. Webb, 433 F.3d at 687.

Defendant argues Plaintiff's medical records fail to show whether her depression and anxiety "were separately severe." JS at 32. However, to the extent Plaintiff's medical records contained such an ambiguity, the ALJ had a duty to "fully and fairly develop the medical evidence to assure he consider[ed] the claimant's interests." Smolen, 80 F.3d at 1288. Defendant's argument merely shows the ALJ failed his "duty to conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150. Hence, Defendant's argument that the ALJ properly found Plaintiff's depression and anxiety non-severe because they were not shown to be separately severe fails. Id.; Webb, 433 F.3d at 687.

### 2. The ALJ's Error At Step Two Was Not Harmless.

Defendant argues even if the ALJ improperly deemed Plaintiff's depression and anxiety non-severe, the ALJ's error was harmless because he considered severe and non-severe impairments in assessing Plaintiff's RFC. JS at 32. However, the ALJ's boilerplate reference to "all symptoms and the extent to which these symptoms can reasonably be accepted" fails to constitute consideration of Plaintiff's depression and anxiety. AR at 26. The ALJ's RFC determination lacks any analysis of Plaintiff's longstanding history of mental health diagnoses and treatments. Id. at 26-29. (In contrast, the ALJ's RFC determination *does* discuss other impairments the ALJ deemed non-severe, including fibromyalgia and carpal tunnel syndrome. Id. at 26, 28.). Not surprisingly, the ALJ's ultimate RFC finding makes no mention of any non-exertional

limitations. Id. at 26-29. The ALJ then provided the VE with hypotheticals that omitted non-exertional limitations and the VE relied on those incomplete hypotheticals in determining Plaintiff's ability to perform her past work. Id. at 76-77. Hence, the error resulting from the ALJ's deficient step two analysis cannot be deemed harmless. Flores v. Shalala, 49 F.3d 562, 570 (9th Cir. 1995) ("We have previously made it clear that, in meeting her burden of showing the claimant's ability to work, the Secretary may only rely upon the vocational expert's testimony if the questions posed by the ALJ include all of the claimant's functional limitations, both physical and mental.").

## VIII.
## **RELIEF**

**A.     Applicable Law**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation and internal quotation marks omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation and internal quotation marks omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

///
///
///
///
///

**B.     Analysis**

In this case, the record has not been fully developed.  The ALJ must reassess Plaintiff's mental limitations and their impact on the RFC determination.  Accordingly, remand for further proceedings is appropriate.[4]

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 5, 2015

HONORABLE KENLY KIYA KATO
United States Magistrate Judge

---

[4] As the matter is being remanded for the ALJ to address the medical records, testimony, and statements relating to Plaintiff's depression, the ALJ shall also reconsider the severity of Plaintiff's alleged anxiety disorder.